All right. Mr. Lipper, happy to hear from you. Thank you, Judge Richardson, and may it please the court. My name is Greg Lipper. I am arguing on behalf of Carlos Turcios Villatoro. The striking after the fact of Mr. Turcios' entire closing argument was both unprecedented, foreclosed by binding precedent, and also devastating to Mr. Turcios' case. In that closing argument, Turcios' counsel offered the jury many, many reasons why the government's case against Turcios, in contrast to the case against the other two defendants, was especially weak. Counsel, in talking about this issue with the closing, seems like one of the questions is whether the decision to strike the closing was a constitutional issue, kind of based on the, I forget the name of the cases, but the one where the judge said, you can give a closing, but I'm not going to listen, and the other one that said, yeah, there was a rule or something about no closings in bench trials, something to that effect. So is it a constitutional issue, or is it a sanction for an improper closing? It seems to me that's one of the things we've got to answer about this. And it feels like this is more of a sanction than a categorical, right from the get-go sort of thing, but I want to hear you on that. So I think either way, it still is a constitutional issue, because the right to present a closing is so central to the defense, both under the Fifth and the Sixth Amendment. Is it a constitutional violation if the district court struck part of it? So if you stood up and said something wildly inappropriate and the court struck a portion of the closing, it seems like you're saying that, too, would be a constitutional violation? No, I'm not saying that. So if striking in order as a sanction for misconduct doesn't violate the Sixth Amendment there, but is within the court's discretion, which obviously can still be abused, but is within the court's discretion, why are you distinguishing this, where there, at least according to the district court, and the district court may have abused its discretion on that, but the district court found that it was rife with a multitude of errors and misconduct? And if the district court was right about that, it seems like a sanction in the same way. So let me say a couple of things, just so we're all, I think, operating on the same terrain. I agree with you that ultimately, well, ultimately, I think it doesn't actually matter in this case what standard you look at it under, because even if it's a discretionary decision, it was a significant abuse of discretion. And I also would say- I understand that, but we've got to answer the threshold question. But I think it's significant in this way, I would say, that to the extent, let me offer this analogy. If, let's say it turned out, obviously, I'm hypothetical, but let's say it turned out the trial counsel was practicing law without a license the entire trial. And at the end of the trial, trial counsel was like, it's come to my attention that trial counsel has no law license. This was obviously improper. You have to be a licensed lawyer to provide. Therefore, ladies and gentlemen of the jury, you must disregard everything that, every question that came out of defense counsel's mouth and everything in the closing. That would have been a sanction, but it would have been a sanction that operated, in this case, to deny Mr. Tercios or any lawyer any defense his Sixth Amendment right. So what if, on the other hand, instead of just striking one inappropriate portion, the lawyer gets up and says, the prosecution's sleeping with the judge. And I rest my case. And they strike it and say, your whole closing struck because it's inappropriate. So you get nothing because everything you did was wrong. So I take your point about that. And I think the reason, I think in a situation like that, though, when it's so extreme as to be justifiably, if it's so extreme that literally each and every sentence in the closing is independently strikable, or the closing is one sentence and it's wildly inappropriate, at that point, I think you have a broader question of, was defense counsel functioning properly? So ultimately, the remedy there is probably going to be a mistrial for one reason or another. Because one way or another, the defendant hasn't gotten a meaningful right to counsel. You mean mistrial for ineffective assistance of counsel? Is that the mistrial you're? Something like that. If you have a situation where defense counsel is so obviously malfunctioning, basically, in the same way that it would if it turns out defense counsel is sleeping through 2 3rds of the trial, that there would be a sanction of sorts. But ultimately, you wouldn't hold that against. But that's a little odd for the court. I mean, we don't typically do ineffective assistance at that stage. And so it seems odd to me to say that a district court could find an inappropriate closing, maybe correctly, maybe incorrectly, and that, as a result, couldn't strike the closing within its discretion. Not a constitutional violation. It's a sanction for misconduct. And we review whether was the district court correct in finding that the closing was so rife with errors that it must be struck as a whole. And that might be an abuse of discretion to do. But they were doing so under an abuse of discretion for sanction of misconduct. I think even if you're looking at it though under an abuse of discretion standard, it's an abuse of discretion in striking the closing, as opposed to abuse of discretion in limiting some supplemental questions or a particular witness. In the same way that the district court often has discretion on the margins, even when there's a cross-examination for bias, for instance. But instructing the jury to disregard an entire cross-examination for bias would likely be an abuse of discretion. But I think in- Can you? I don't want to get out of order, but I guess I am going to. Yes. So assume, just hypothetically, that it was an abuse of discretion. Yes. And can you tell me what you've- in that instance, we now apply harmless error. And we sort of ask, I think, if the jury considered everything that was said, is there a reasonable probability that they would have done something different? They would have acquitted in part? With respect to the murders, I get the drug piece maybe. But with respect to the murders, tell me what was in the closing that you think would have convinced a reasonable jury? Like, why is it not harmless? It wasn't like a model of advocacy. And so help me understand, what was in it that would have convinced a reasonable jury? I'll be happy to do that. I think there's a number of things. Before I do that, though, I want to make two points, just that the government has not argued harmless error on the jury argument issue, number one. I don't think, I'm not sure that matters. I think we're under a command of the federal rules that we may not grant relief unless substantial rights are affected. I believe that's an argument that, like many other arguments, that's an argument that the government can assert and waive. And putting that as. I don't know about that. All right, and the other point I would make is because, again, it was, because the instruction implicated the constitutional right to deliver a closing, that the error would have to be harmless beyond a reasonable doubt. All that said, under any. If it's a Sixth Amendment and not an abuse of discretion. Well, but it can be an abuse of discretion in the same way that a limitation of the Sixth Amendment right to confront. Even if there's certain aspects of that that might be reviewed for abuse of discretion, it's still ultimately a constitutional error. But I would say under any standard, it was not harmless error in this case. Because the case against Mr. Tercios, and this is where I want to distinguish him from the other two defendants. Can you at least start with what, I understand you want to go to the evidence in general. But tell me, what are the five things, or two things, or one thing that was said in the closing that you think might have had some influence, whatever that standard we want to apply, on a jury? Because I'll just confess up front, when I read it, it wasn't particularly persuasive in thinking that that was going to convince a jury of anything. And so I'm just curious what you think in the closing itself, whether proper or improper. Even if it's improper, it's fine by me. But what in it that you thought was even plausibly persuasive? So first of all, the discussion of Karen Figueroa, although it was the government's witness, Karen Figueroa, who was, I think objectively, based on her incentives to testify, was a far more credible witness than virtually all of the other co-conspirators that the government presented, testified that immediately after the shooting, Blue, the only witness against Tercios in this murder, called up her husband in the car. And on speaker, she heard Blue say that he committed this murder as it was him, and it was Aravalo, but did not mention Tercios. So right off the bat, that is, and that's a witness with no particular incentive to lie about that, number one. Number two, and we heard some discussion of this in the previous argument, but trial counsel also referred to two other witnesses who, although they weren't present, their testimony was summarized through stipulations in which, again, shortly after the murder, they heard confessions from either Molina or Blue that it was Blue and Molina who committed the murder and not Tercios. So you have three accounts from immediately after the murder in which Blue and or Molina are identifying themselves or Aravalo, but not Tercios. And your argument is that without the closing argument, like the jury wouldn't have understood Blue's confession or those references, right? That that evidence was sufficiently convoluted that a jury couldn't figure out what Figueroa said, couldn't connect the pieces. Like, what about the closing? I mean, I get, this is hard, right? Because closings are not evidence, right? But the evidence on that point seems to be pretty straightforward. The argument seemed not to be straightforward, maybe as the evidence was. Help me understand why you think the argument, I get the evidence point. I actually think the argument was straightforward in the sense of, you know, I think Figueroa was one of the more recent, you know, Figueroa, I think, was presenting of, like, this is a witness with far less reason alive than the other people, and she is inculpating these two and not inculpating my client. But this is where I think you can't separate the harm from the error from the importance of the closing argument. The reason why in Herring and then in this court's case, the 1981 case, I believe it's King, the reason there is such a strong right to a closing is because it is the only opportunity for defense counsel to synthesize everything that's happened. And here, as even the district court recognized, this was a long trial. It was a complicated trial. There were a lot of different names. There were a lot of different people. There were a lot of different nicknames. And alter egos. Even as we heard in the prior argument, Tercios's counsel wasn't even the one because the responsibilities per the district court's order were divided up amongst defense counsel. The jury hadn't even heard Tercios's counsel confront Figueroa directly, if I am correct about that, because of the division of responsibility. So this was, especially in a complicated co-defendant trial, this was absolutely the only opportunity for Tercios to have everything synthesized into a whole. And to emphasize, here are the witnesses and here are the facts that are important to Tercios. Because then again, I think this is important. A lot of those other witnesses, they didn't exculpate. Karen Figueroa didn't exculpate Aravalo. So Aravalo's counsel had no incentive to emphasize this. Tercios's counsel did. The other thing I want to mention is the alibi witness that was unique to Tercios. Because the government's theory was the murder happened in a continuous course of action starting the night of the 21st and going into the morning, early in the morning of the 22nd. And in fact, Blue, again, the sole eyewitness against Tercios, testified that they were together from the night before into the morning. That they were driving around looking for one of the people, and eventually they found him and then they killed him. So a continuous multi-hour course of events starting the night before and continuing. And the alibi witness, who testified actually a very specific reason why she remembered it was that night that she had seen him, testified that she was with Mr. Tercios in his, say residence, in his tent from 11 PM until 12 AM on the night of the 21st. Which means that Blue's testimony that all three of them were in the car together starting the night before continuously would not have been, if the alibi witness would have been. Can you address the point that an alibi is not an impeachment of a witness, but is instead that you were not present for the crime? So we don't give an alibi instruction any time you have another witness who testifies to something that impeaches the testimony, right? Because I take your point to be Blue couldn't have been fully truthful when he says he was with them all night into the next morning because at midnight he was somewhere else. That's not really an alibi unless the murder happened between 11 and midnight, right? It's an impeachment, perhaps, of Blue, but it's not an alibi. An alibi is that you were not present at the time of the crime, and the crime here is at an unknown time. I see my time has expired. May I answer? You can definitely answer. Thank you. So I think that the distinction you identified, I think, in the context of prejudice to Tercios does not- It's not prejudice. It's just whether there's an error in giving the alibi instruction at all. Well, so I was actually pointing to the alibi in the context of further prejudice from the striking of the closing because the alibi witness was discussed in the closing. And I think, though, I think you have to look at the alibi. And there's a case, I believe, from the Eighth Circuit we cited that raises a similar point. When the only testimony about Tercios' involvement, when the theory of the case in practice as presented was all of these people were together from time A until time B continuously, and then you have a witness that says, well, he wasn't there during part of that continuous block. Yes, in theory, there could have, perhaps on a sufficiency challenge, there might have been sufficient evidence for a jury to conclude. But in terms of actual effect on the deliberations or effect on the application of the reasonable doubt standard, if the only witness putting Tercios in the crime is saying, he was in the car with me from 11 PM until 2, 3 AM, and now you have a witness saying, well, no, he wasn't, then if believed, it undermines the only explanation for how Tercios participated in this murder. And thus, whether or not it would require a directed verdict, it certainly would inform the deliberations of the jury when they're considering whether it had been proven beyond a reasonable doubt. Thank you, counsel. Thank you. We'll hear from you again in a minute. Thank you. Happy to hear from you. May it please the court. The Constitution, of course, protects a defendant's right to an opportunity to present a closing argument. The Constitution does not protect a defendant's right to deliver an improper closing argument. That's the fundamental distinction that my colleague and I are drawing in this case. You're not arguing that the entire closing was improper, are you? That was the district court's finding. Well, the district court struck the entire closing. I don't think that's the same as finding that the entire closing was improper. The district court found it was, quote, an inappropriate closing argument almost from the beginning. That's at JA 3697. In denying the post-trial motions, she found it was way beyond the bounds of an appropriate closing argument. That's at JA 4111. She went on to say, I've just never seen it done like that before. And this is a judge who's been practicing. What's wrong with what the closing said about the, call it alibi, with the caveat that Judge Richardson just mentioned? The closing, they talked about this witness who came and said, from this time period, I was with Tercios. I mean, there was no, that wasn't anything that anyone objected to as being improper. That wasn't anything that was used to describe improprieties in the closing. And yet, she said, you must disregard counsel's pointing out that fact. So perhaps that sentence or paragraph as to the alibi argument? No, no. This is actually the one place where I think the closing argument was wrong, right? As opposed to, like, tons of places I think were. But the argument assumed facts not in evidence, that the murder happened between 11 and 12. Yes, Your Honor. The argument did not make the argument that we heard, which is a very plausible argument from your colleague, that this showed that Blue was a liar because he said he was there the whole time. The argument, as I understood it, was that this was an actual alibi, that he wasn't there with the murder, because we can understand, based on some facts that don't really exist, that we can presume that murder happened between 11 and 12. So this was assuming, the whole premise of the argument here was to assume facts not in evidence. That is, the murder happened between 11 and 12, right? That's fair, Your Honor. And that was one of several instances of counsel arguing facts that were not in evidence. And I think that's one of the overarching problems with the closing argument. What about the notion that if you, and I'm not blaming the government from this, because it sounded like there were efforts to object that may have not been permitted. But typically, if there's an improper statement in a closing argument, there's an objection. And if the court sustains the objection, everyone knows that. A, it's struck at that time. And B, the defense lawyer at least has the ability to, or whatever lawyer, has the ability to then react and give his or her best effort at a proper one. That seems like that's a problem here, doing this after the fact rather than as the issues came up. You kept the defendant here from being able to adjust and do anything. So if I could address that in two parts. First, as far as whether there was an objection, yes, at JA 3669, Mr. Blanchard said, objection. It's in the transcript. And the district court said, no, you can't do it, is what the district court said. And then the district court later, after the fact, said he tried to object. And I kind of weighed him down. So my point is not that the government wasn't trying to object. It's not really a preservation issue. It's that it was an error. Or why was that not an error? I understand your question to be directed at the district court choosing to resolve this issue at the end of the closing rather than during. And a couple of observations. I think certainly the district court could have either permitted contemporaneous objections, or the district court could have intervened sua sponte. However, that carried on. I'm sorry. You said the district court could have permitted contemporaneous objections. That seems to suggest that you think it's a permissible rule for a district court to prohibit contemporaneous objections. That seems like a wild rule. Maybe that particular rule, apparently local rule of this judge, is maybe not challenged here. But that would be a wild rule, that you are prohibited from objecting, either side. Yes, Your Honor. I'm not sure it's a rule. It's more of a policy. I would note this court actually upheld this practice of Judge Brinkma's in a case called Wills from 2003, where defense counsel tried to object during the government's closing argument. And Judge Brinkma in that case said, don't object. Wait until your turn, and then you can address the improper remarks in your closing. Is that the published opinion? Yes, I'm just looking for the citation. And I would be happy to provide it for you. Wills, this is 346 F 3rd 476, Fourth Circuit, 2003. It is in the briefs. I can't recall exactly where, but it is cited here. Returning to why it was not an abuse of discretion to wait until the end of the closings to address the improper remarks, it could have been more damaging to counsel and or to the jury's reception of the closing arguments to have the district court interject in the presence of the jury and comment on defense counsel's perhaps improper presentation to the jury. It also could have drawn more attention to these remarks. That would have been more prejudicial than striking the entire closing and instructing the jury to disregard it? I'm thinking about there's a case. It's cited at page six of the reply brief. It's just a string cite, but it's an interesting set of facts. It's called Busick from the Second Circuit. In that case, it was a significantly longer closing argument, approximately three hours after a five-week trial. And in that case, the district court interrupted defense counsel 44 times. Now, a majority of that panel said that was not an abuse of discretion on the facts of that case, but acknowledged that on a different set of facts, to have the district court continually interjecting and essentially reprimanding defense counsel about why their remarks were improper could deprive the defendant of a fair trial. But that's what I'm getting at. I understand this is a different set of facts. But counsel, listen to this part. It's not just to disregard the closing. That's a lot, because that at least gets back to Judge Richardson's point that there was evidence presented, and the jury might have remembered it. And despite the arguments, that might have been hard given the length and number of players here. But putting all that aside, right after saying that, says you may not use any of the information or argument she offered as you deliberate in this case. I mean, what do you do with that? You can't use any of the information. That doesn't say go back and disregard evidence that came in, but maybe they might have thought that. My understanding of that instruction was that the district court was instructing the jury not to consider, in its deliberations, the information that was not in evidence. And that's a perfectly proper instruction. I mean, that's the entire reason why there are rules about proper closing. You may not use any of the information or arguments she offered as you deliberate in this case. I mean, there was stuff not in evidence talked about, but there was stuff that was in evidence talked about. And doesn't that instruction say you can't consider the evidence she talked about that was in the case as you deliberate? It can be read that way. I was focusing on the information or arguments because I think the overarching concern is about having the jury reach a verdict based on something other than the evidence presented in the case, which is really that goes to the heart of the district court's responsibility to control what goes to the fact finder. And that's why I think she was correct to be most concerned about the vouching for Karen Figueroa and the arguing of multiple facts that were simply not in evidence here. But rather than instructing the jury to disregard those specific segments of the closing, as Judge Cordovan points out, the instruction was to disregard the entire closing, both the arguments and the information. That's correct, Your Honor. Again, I think we could be here in a different posture if the district court had sort of cataloged, here are 15 or 20 different remarks that were improper, and here are the reasons why. That would not only highlight for the jury, sort of drawing new emphasis to the improper remarks, and also possibly cast defense counsel in an improper or negative light by highlighting just the volume of improper remarks here. I mean, just as a practical matter, you've heard a few closing arguments before. And I venture to say that improperly, admittedly, but virtually all of them include some version of vouching, even if just accidentally, I believe. I mean, you could say anything. If you put I believe in front of it, it's improper vouching. If we had a rule that like vouching and referencing quote, unquote, facts not in evidence, when lawyers on both sides tell stories to illustrate points, if we could strike the whole closing any time that happens, that's like a pretty remarkable set of circumstances, particularly where the defense lawyer doesn't know that they've exceeded what that judge finds to be appropriate until after the case is closed. I mean, that's like a remarkable line for the government to suggest. I don't think it's that remarkable, just because these are foundational concepts that lawyers learn, both prosecutors and defense attorneys understand. It's a cardinal rule that you can't argue facts not in evidence. Have you argued harmless error? And do you think it matters that you have not, to presuppose the answer to the first question? I mean, I'll just acknowledge the brief does not assert a separate harmlessness ground. I think you're correct that the court could resolve the case on that basis. Assume we can consider it. Give me your harmless error argument. I think the best evidence of that is the fact that Arevalo and Menjivar, whose closing arguments the jury was permitted to consider, were convicted of all the same counts that Mr. Tercios was. Are you aware of any cases where the district court has struck an entire argument? No, Your Honor. Do you have anything else? Unless the court has any further questions, we ask that you affirm. Thank you, counsel. Mr. Hoover, you've got a few minutes. Thank you, Judge Richardson. One thing I just want to clarify up front, I think, first of all, it's implausible to say that striking the closing in full is somehow a less restrictive option than striking certain portions of it during the closing. But to the extent the government's suggesting that the trial court did this to protect the credibility of defense counsel, when the trial court instructed the jury to disregard the closing in full, she also, several times, said that trial counsel had acted improperly, had engaged in, I forget if she said the word, misconduct. But she said something to that effect several times. So we got the double whammy here of not only was the argument struck in full, but also trial counsel's credibility was attacked several times. And as Judge Quattlebaum pointed out, that the jury was instructed to disregard the information contained there. And I want to just emphasize the government's concession that the instruction can be read the way, I think, Judge Quattlebaum posited and the way we posited, point number one. Point number two, the fact that the other two co-defendants were also convicted, notwithstanding the fact that they were allowed to deliver closings, does not show, does not allow the court to say, well, obviously, closings wouldn't have mattered for anyone in this case, including Tercios, because the evidence against those other two defendants was much stronger. I mean, Aravalo, unlike Mr. Tercios, Aravalo had been corresponding by text with one of the victims. And Aravalo essentially endorsed a memo that Blue had prepared saying that he had participated, whereas Tercios didn't. So you had, essentially, an adopted admission by Aravalo, whereas the evidence against Tercios was Blue and Blue alone, and where you had multiple witnesses, including Figueroa, saying that other people were involved and not Tercios. And so you can't simply say, well, the other two defendants had closings and were convicted. Therefore, a closing could not possibly have mattered to Tercios. Judge Richardson, I wanted to address one point. I think you had alluded to in questioning the government about the closing arguments discussion of the alibi, because I actually don't think it was quite, or it may have been Judge Quattlebaum, I apologize, I forget which one. But I don't think the closing was a So you can't tell the difference between us? I take that as a compliment, by the way, in case there's ambiguity. Your Honor, it's very hard to tell judicial robes apart, especially when there's no stripes. What trial counsel said, and so on JA36, pardon me, I just lost my place. What trial counsel said, first she was discussing the testimony about what was going on the night before, the driving around. And then I believe it is 36, it's in the 3660 area. I apologize, I had it in front of me and then turned the page. But what trial counsel said was, the witness, the alibi witness, said she was with Tercios from 11 PM until 12 AM. And again, whether or not it made it formally impossible for Tercios to have participated in the shooting, it certainly made it impossible for the shooting to have taken place the way the sole witness against him described it. And again, it's the government's burden to prove beyond a reasonable doubt that Tercios committed the crime. And so if the government is presenting a single explanation for how Tercios participated in the crime, and then a defense witness is saying, well, no, he was with me for part of the time, he was in his own house, in his own tent, not in this other guy's car, that certainly could have affected the outcome, given the government's burden of proof. I'm sorry, was there a, oh, I'm. No, that's fine. I understand your point. And actually, it's the J3664 is where the discussion is. So it's the middle paragraph, where first, the trial counsel just points out that the witness has no incentive to lie. And then she came in, she told you that she hiked up the hill behind the trailer park, and she was with him from 11 PM to 12 AM that night. And that is, you know, the final point I want to make is, not only are things that the government now claims of misconduct, things that the case law generally permits lawyers to do, or understands happen sometimes, but it would be quite anomalous for this to be both the only case in which a closing has been, the jury has been told to disregard a closing in full, on the one hand, and yet to have not only this few objections, but also the trial court, who was not shy about interrupting closings. I mean, Tercios's counsel got interrupted at least once because she strayed from the lectern a few too many paces when using the Elmo. Trial counsel was not shy about interrupting closings. And yet, this closing that supposedly was tainted from the start drew no comment in its substance or style from the trial court throughout. And it seems like those two sets of circumstances are very difficult to reconcile, unless the court has any further questions. Thank you, Mr. Lipper. As court appointed counsel, we appreciate your hard work on this appeal, and to the extent you're involved below in your work there, too. Thank you, Your Honor. Thank you, counsel. We'll come down and greet counsel, and we'll proceed to our fourth and final case.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Nicole G. Berner